## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## HARTFORD DIVISION

| | |
|---|---|
| In re:<br><br>Samuel Aaron Laurion and<br>Heather Renee Laurion,<br><br>      Debtors. | Chapter 7<br><br>Case No. 24-20521 (JJT) |
| Samuel Aaron Laurion,<br><br>      Plaintiff,<br><br>v.<br><br>PHH Mortgage Corporation,<br><br>      Defendant. | Adv. P. No. 24-02019 (JJT)<br><br>Re: ECF Nos. 6, 10, 14, 26, 32, 33, 34 |

## MEMORANDUM OF DECISION
## GRANTING AMENDED MOTION TO DISMISS

Appearances
Samuel Aaron Laurion
*Pro se Debtor–Plaintiff*

Tara L. Trifon
Troutman Pepper Locke LLP
20 Church Street, 20th Floor
Hartford, CT 06103
*Counsel for Defendant PHH Mortgage Corporation*

      Before the Court is the Amended Motion to Dismiss (Motion, ECF No. 14)

filed by defendant PHH Mortgage Corporation. In the Motion, PHH requests that

this Court dismiss the Adversary Proceeding complaint (Complaint, ECF No. 1)[1] filed by the Debtor, Samuel Aaron Laurion.[2] In the Complaint, the Debtor seeks damages and injunctive relief for alleged violations of the discharge injunction by PHH. For the following reasons, the Court agrees that the Debtor has failed to state a claim for relief upon which relief can be granted and accordingly dismisses the Adversary Proceeding. Because the Debtor's allegations are frivolous, the Court will also deny leave to amend.

## 1.  Background

### 1.1    Procedural History

Underlying this dispute is a mortgage granted by the Debtor when he borrowed money to purchase real property located at 8 White Oak Drive, Colchester, Connecticut.[3] On October 18, 2023, the Debtor quitclaimed 8 White Oak Drive to the Laurion Family GodTrust (Trust),[4] which was recorded the following day in the Colchester land records.[5]

Prior to the underlying bankruptcy case, the Debtor, in both his individual capacity and as trustee of the Trust, filed a complaint against PHH and related parties in the United States District Court for the District of Connecticut (District

---

[1] The Complaint was styled a Motion for Sanctions for Violation of the Discharge Injunction as to PHH Mortgage Corporation. Given the relief sought by the Debtor, the Court has construed it as an adversary complaint and this Adversary Proceeding was accordingly opened.

[2] Because Heather Laurion is not a party to this Adversary Proceeding, all references to the Debtor are to Samuel Laurion alone.

[3] The Debtor has referred to this property as Rural Route 8 White Oak Drive, Colchester, Connecticut Republic, [06415] Outside D.C. The two are the same thing.

[4] The Debtor sometimes refers to this as the Laurion Familia GodTrust. The Debtor is the trustee of the Trust.

[5] The Court has previously taken judicial notice of the Colchester land records.

Court Action).[6] In the District Court Action, the Debtor sought rescission of the note and mortgage underlying his purchase of 8 White Oak Drive based upon the Truth in Lending Act (TILA) and Regulation Z. The Debtor immediately sought a preliminary injunction, which the District Court denied because the Debtor "ha[d] not established a sufficient likelihood of success." Particularly, the District Court noted that the Debtor's "mortgage is not eligible for rescission because . . . [the Debtor] entered into a purchase money mortgage." After nothing substantive occurred while the Debtor's bankruptcy case proceeded, the Debtor moved to dismiss the District Court Action,[7] which the District Court did without prejudice on February 13, 2025.[8]

While the District Court Action was pending, the Debtor and Heather Laurion filed for relief under Chapter 7 of the Bankruptcy Code on June 5, 2024. After the Chapter 7 Trustee filed a Report of No Distribution on August 28, 2024 (MC ECF No. 27), an order discharging the Debtor and Heather Laurion entered on September 18, 2024 (MC ECF No. 31). Two days later, the Debtor filed a Motion to Avoid Lien against PHH (ECF No. 34). The Court denied (ECF No. 63) the Motion to Avoid Lien (and two others against other creditors) on October 29, 2024. In doing so, the Court noted that the mortgage PHH holds on the Debtor's residence is a

---

[6] *See* Complaint, *Laurion v. PHH Mortgage Corp.*, Case No. 3:23-cv-01561-JAM, ECF No. 1 (D. Conn. Nov. 29, 2023). The Court has previously taken judicial notice of the District Court Action.

[7] Although the Chapter 7 Trustee has indicated his intent to abandon all property of the estate, absent a Court order, such abandonment does not happen until the closing of the case. *See* 11 U.S.C. § 554(c) and (d). Accordingly, the causes of action in the District Court Action properly belong to the Chapter 7 Trustee and the Debtor had no standing to move for its dismissal.

[8] The Debtor indicated that, due to the overlapping nature of the District Court Action and this Adversary Proceeding, he wished to proceed in this forum to avoid "unnecessary complexity, inefficiency, or prejudice against one or both parties."

consensual purchase money mortgage and that the Debtor had quitclaimed the property into a trust, meaning an exemption could not be claimed in it.

After the Court denied the Motion to Avoid Lien in the underlying bankruptcy case, the Debtor filed the instant Adversary Proceeding on November 11, 2024. PHH filed its first Motion to Dismiss (ECF No. 6) on December 23, 2024. After the Debtor filed a response (ECF No. 10) on January 8, 2025, the Court held a hearing on January 30, 2025. At that hearing, PHH indicated that it would consent to entry of final orders or judgment by this Court, prompting its filing of the instant Motion on February 5, 2025. The Court allowed for supplemental briefing, with both parties filing such briefs (ECF Nos. 26, 32). The Debtor then belatedly filed a "Counterclaim" (ECF No. 33) on March 11, 2025, and a "Motion for Equitable Relief in Exclusive Equity, Setoff of In Rem Claim under Trust Law, Recognition as Subrogee under Right of Reversion, and Request for Sealed Proceedings" (ECF No. 34) on March 13, 2025.[9]

### 1.2    Allegations in Complaint

In the Complaint, the Debtor alleges that PHH has violated the discharge injunction by: (1) having a practice of holding partial payments in suspense, (2) providing a loan statement with an ambiguous disclaimer, and (3) responding to a request for verification under the Fair Debt Collection Practices Act without noting the Debtor's discharge. His Complaint and attached affidavit allege

---

[9] Because he is the plaintiff, the Debtor does not assert counterclaims. The Court will construe that filing as a motion to amend the Complaint. Likewise, the Debtor's motion seeks affirmative relief that the Court will also construe as a motion to amend the Complaint. The Court will address both later in this Memorandum of Decision after addressing the claims made in the Complaint as filed.

4

emotional distress and financial hardship for his family, including adverse effects on Heather Laurion's health. In his prayer for relief, the Debtor requests immediate cessation of collection activities, acknowledgement of a discharge violation and apology, damages in the amount of $150,000, confirmation of discharge of the debt, and a release of the mortgage lien.

Additional factual allegations pertinent to this decision will be addressed as necessary below.

2. Jurisdiction

The United States District Court for the District of Connecticut has jurisdiction over these proceedings under 28 U.S.C. § 1334(b), and the Bankruptcy Court derives its authority to hear and determine this matter on reference from the District Court under 28 U.S.C. § 157(a) and (b)(1) and the General Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984. This Adversary Proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(O). To the extent that the claims asserted in this Adversary Proceeding are related to or *Stern* claims,[10] the Court construes the Debtor's silence in the Complaint as implied consent to this Court exercising final adjudicatory authority. *See Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 683–85 (2015); Fed. R. Bankr. P. 7008(a) ("In an adversary proceeding before a bankruptcy court, the complaint, counterclaim, cross-claim, or third-party complaint shall contain a statement that the pleader does or does not consent to entry of final orders or

---

[10] *See generally Stern v. Marshall*, 564 U.S. 462 (2011).

judgment by the bankruptcy court."). PHH has consented to entry of final orders or judgment by this Court.

3. Discussion

Under Rule 12(b) of the Federal Rules of Civil Procedure, as applied by Rule 7012 of the Federal Rules of Bankruptcy Procedure, a party to an Adversary Proceeding may assert by motion, among other things, the defenses of failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

In this Court's review of the Debtor's Complaint, "[t]he pleadings and allegations of a pro se plaintiff must be construed liberally for the purposes of deciding motions pursuant to . . . 12(b)(6)." *Zapotocky v. CIT Bank, N.A.*, 587 B.R. 589, 592–93 (S.D.N.Y. 2018) (citing *McKithen v. Brown*, 481 F.3d 89, 96 (2d. Cir. 2007); *Weixel v. Bd. of Educ.*, 287 F.3d 138, 145–46 (2d Cir. 2002)). "The submissions of a pro se litigant should be interpreted to 'raise the strongest arguments that they suggest.'" *Id.* (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). While so generously construing the Debtor's allegations as urged by our jurisprudence, the Court cannot ignore where the Debtor misconceives the law, the authority of the Court, or his rights of access to justice.

The United States Supreme Court has laid out a two-step test to evaluate a complaint's sufficiency. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, except for legal conclusions, all allegations contained in the complaint are accepted as true. *Id.* Second, the complaint must state a plausible claim for relief to survive dismissal. *Id.* at 679. The plaintiff makes a facially plausible claim when he "pleads factual

6

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id*. (citation and internal quotation marks omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. (citation omitted).[11]

Under 11 U.S.C. § 524(a): "A discharge in a case under this title— . . . (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]" Section 524(a)(2) "extends to all forms of collection activity, including letters, phone calls, threats of criminal proceedings or other adverse actions intended to bring about repayment." 4 Collier on Bankruptcy ¶ 524.02[2] (16th ed. 2025). "Like the automatic stay of section 362(a), the discharge injunction is the

---

[11] Before addressing the merits of the claims as alleged, the Court must observe that the Debtor filed this action alone because he was indisputably the sole signatory to the note and mortgage at issue in this case. He has no standing to assert any claimed damages to his wife or other family members. Given that the Debtor fails to state a claim upon which relief can be granted in any regard, this point is largely academic, but the Court must acknowledge it nonetheless because it implicates subject matter jurisdiction. Therefore, the Court only addresses the claims alleged as they pertain to the Debtor directly.

equivalent of a court order. Therefore, a violation of the injunction may be sanctioned as contempt of court." *Id.* (footnote omitted).[12]

The Chapter 7 discharge relieves the Debtor of his *in personam* liability, but

As the Supreme Court held in *Dewsnup v. Timm*, 502 U.S. 410, 112 S. Ct. 773, 116 L. Ed. 2d 903 (1992), Chapter 7 does not provide for stripping of in rem liens. Liens are therefore said to "pass through" or "survive" Chapter 7 bankruptcy. *See Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S. Ct. 2150, 115 L. Ed. 2d 66 (1991). The holder of the lien will continue to have recourse for the underlying debt in the collateral itself, despite the discharge of the debtor's personal liability, which prevents the creditor from recovering against any other of the debtor's assets.

*Curwen v. Whiton*, 557 B.R. 39, 42 (D. Conn. 2016). "When a secured creditor retains a lien on the debtor's property after the discharge, courts have held that it is not per se improper for the secured creditor to contact a debtor to send payment coupons, determine whether payments will be made on the secured debt, or inform the debtor of a possible foreclosure or repossession, as long as it is clear the creditor is not attempting to collect the debt as a personal liability." 4 Collier on Bankruptcy ¶ 524.02[2][b].

As noted above, the Complaint asserts that three particular acts by PHH constitute a violation of the discharge injunction, namely: (1) PHH's practice of holding partial payments in suspense, (2) PHH's having provided a loan statement with an ambiguous disclaimer, and (3) PHH's having responded to a request for

---

[12] Civil contempt is imposed under 11 U.S.C. § 105 and requires a finding that there is no fair ground of doubt regarding the wrongfulness of the violator's conduct. *Taggart v. Lorenzen*, 587 U.S. 554, 560–61 (2019).

verification under the Fair Debt Collection Practices Act without noting the Debtor's discharge. The Court addresses each in turn.

### 3.1    Suspense Payments

The first claim is easily dispensed with. The Debtor alleges that PHH has violated the discharge injunction by having a practice of holding partial payments in suspense, which he claims misleads him into believing he had an obligation to pay. Nowhere, however, does the Debtor allege that PHH held his payments in suspense, which is confirmed by the monthly statement that the Debtor attached to his Complaint. In fact, that statement showed that *no* payments had been made in 2024.

Section 524(a)(2) enjoins creditors from "the commencement or continuation of an action" (i.e., a lawsuit) or "act[s] to collect, recover or offset any . . . debt as a personal liability[.]" The first is not applicable here. The second requires that the creditor have *acted*. The mere policy of a suspense account, without its actual application, is not an act. *Cf. Jacks v. Wells Fargo Bank, N.A. (In re Jacks)*, 642 F.3d 1323, 1329 (11th Cir. 2011) ("The mere recordation of fees incurred by Wells Fargo on its internal records, without any attempt to collect these fees from the debtor or estate or to modify the mortgage, is not an 'act' in violation of § 362(a)(3)."). Accordingly, there is no plausible discharge violation pleaded with regards to any suspense account.

3.2    Loan Statement

The Debtor next complains that a loan statement dated October 17, 2024, was ambiguous and thus caused "confusion and coercion." The statement, which is attached to the Complaint as Exhibit A, shows prominently near the top left:

> **Bankruptcy Message**
>
> Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.
>
> We are sending this statement to you for informational and compliance purposes only. It is not an attempt to collect a debt against you.
>
> If you want to stop receiving statements, write to us at:    PHH Mortgage Services
> PO Box 24736
> West Palm Beach, FL 33416

The Debtor states in the Complaint that the first sentence "breaches clarity requirements under 12 CFR 1026.41(f)(2)(i)."[13]

Section 1026.41(f)(2) of title 12 of the Code of Federal Regulations, which is part of Regulation Z provides:

> Bankruptcy notices. The periodic statement must include the following:
> (i) A statement identifying the consumer's status as a debtor in bankruptcy or the discharged status of the mortgage loan; and
> (ii) A statement that the periodic statement is for informational purposes only.

The Debtor chiefly takes issue with the fact that the loan statement does not *only* say that he has received a discharge, instead providing that PHH knows that he is either a debtor in bankruptcy *or* has received a discharge of his personal liability. But a plain language reading of § 1026.41(f)(2)(i) does not support the notion that PHH *must* identify which of the two is currently true.

---

[13] The Debtor elaborated at the January 30, 2025 hearing that he finds the use of the word "or" confusing.

Under § 1026.41(a)(2), PHH is required to send periodic billing statements for mortgages. A mortgage servicer like PHH is exempt from this requirement if a consumer receives a bankruptcy discharge and that consumer requests in writing that PHH cease providing periodic statements. *Id.*, § 1026.41(e)(5)(i). There is no allegation that the Debtor made such a request here (or that he fell into some other exception).

The bankruptcy disclaimer at issue here matches that provided by the Consumer Financial Protection Bureau in its sample modified mortgage statement. *See* Form H-30(E). Because the CFPB promulgated Regulation Z and Form H-30(E), it is simply not plausible that PHH's use of the language provided on the sample form somehow violates the regulation requiring a bankruptcy disclaimer. Moreover, the Second Circuit has held that periodic statements required by the Truth in Lending Act, 15 U.S.C. § 1638(f), as implemented by 12 C.F.R. § 1026.41, "do not reflect attempts to collect [a] debt" under the FDCPA. *Hill v. DLJ Mortg. Cap., Inc.*, 689 F. App'x 97, 98 (2d Cir. 2017) (unpublished opinion). The Court fails to see how that logic does not likewise apply to claimed violations of the discharge injunction.

The Debtor's conclusory allegations that he was somehow confused and misled do not change the calculus. Objectively, the bankruptcy disclaimer on the October 17, 2024 statement complies with Regulation Z and is not attempt to collect a debt in violation of the discharge injunction. The Debtor's alleged confusion with the law or the disclaimer's objectively plain language is of no legal significance. Accordingly, the Debtor has failed to state a plausible claim for relief in this regard.

11

### 3.3     Debt Verification Request

The Debtor final claim is like the prior one. According to the Complaint, on November 4, 2024, the Debtor requested that PHH provide verification and itemization of the mortgage debt under the FDCPA. PHH's response included a Payoff Statement (attached to the Complaint as Exhibit B) that, among other things, did not provide a bankruptcy disclaimer.

In the Motion, PHH stated that it indeed responded to the Debtor's November 4, 2024 request, but that the Debtor conveniently failed to include the cover letter that came with it (ECF No. 6, Ex. F), in which PHH's counsel stated: "It is important to note that PHH acknowledges the bankruptcy discharge order and is not seeking to collect on the debt outside its contractual right to foreclose the Mortgage."

This Court must limit its analysis under Rule 12(b)(6) to the four corners of the Complaint. *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998). The four corners, however, may include "documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996). Additionally, the Court can rely on "documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

The Complaint alleges that PHH's "response *included* a Payoff Statement . . . that did not clarify [the Debtor's] discharged status[.]" (emphasis added). This

statement clearly indicates that the response was more than just the Payoff Statement that he alleges violated the discharge injunction. Moreover, at the January 30, 2025 hearing, he acknowledged that the Cover Letter attached as Exhibit F to the original Motion to Dismiss was indeed part of the response sent to him. The Debtor's selection of a part of what was provided to him in response to his inquiry does not limit this Court's review of the Cover Letter because it was part of the admittedly complete response provided to him and was thus both incorporated into the Complaint by reference and known and relied upon by the Debtor in bringing suit.[14]

Analyzing the communication holistically, the Debtor's claim regarding PHH's response to his request to verify the debt suffers the same infirmities as his claim regarding the billing statement. First, Regulation Z requires that mortgage lenders provide payoff statements upon written request—with no exception related to bankruptcy. 12 C.F.R. § 1026.36(c)(3). PHH complied with the Debtor's request as required by law, but made sure to note at the outset that it acknowledged the bankruptcy discharge and was not seeking to collect outside its right to foreclose. That the Debtor would make the request and then claim a discharge violation is calculated gotcha-ism at its worst. Because PHH both complied with the law in providing the requested information and complied with the law in appropriately noting the Debtor's discharge status, the Debtor has failed to allege a plausible claim for relief.

---

[14] The Court therefore holds that it need not convert the Motion to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d).

4.  Leave to Amend

Having decided that dismissal of all counts is warranted, the Court must consider whether to allow the Debtor to amend his pleadings. The Court determines that such would be futile and thus declines to do so.

Under Federal Rule of Civil Procedure 15(a), as applied by Rule 7015 of the Federal Rules of Bankruptcy Procedure:

(1)  Amending as a Matter of Course. A party may amend its pleading once as a matter of course no later than:
(A)  21 days after serving it, or
(B)  if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
(2)  Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Subsection (1) does not apply because each of the specified 21-day periods has passed. It is also apparent that PHH will not consent to amendment. That means amendment is only possible with this Court's leave, which the rule says it "should freely give leave when justice so requires." *Id.* Under this "liberal and permissive standard, . . . the only grounds on which denial of leave to amend has been held proper are upon a showing of undue delay, bad faith, dilatory motive, or futility." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021) (cleaned up), *cert. denied*, 142 S. Ct. 1112 (2022). Although the first three grounds would potentially require the Court to hear and weigh evidence, the Court has more than enough information

14

from the record of prior proceedings to determine whether any amendment would be futile.

"Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

With regards to the three claims made in the Complaint, no amount of amendment can transform them into plausible claims. The Debtor's misleading arguments simply misconstrue the law and misstate undisputed facts, and his self-serving, conclusory allegations of confusion do not objectively make PHH's communications so.

The Debtor, however, has also filed two documents that the Court is construing as motions for leave to amend the Complaint (ECF Nos. 33, 34). In the first, the Debtor largely reiterates his allegations in the Complaint, but attempts to add a claim for fraud in the mortgage's inception and seeking equitable setoff as a remedy. The Debtor states, without any particularity, that PHH "perpetuated a fraud where no funds were advanced, yet payments were coerced, vitiating the mortgage with no statute of limitations bar." In the second of these filings, the Debtor further seeks a setoff, arguing that "[t]he United States operates under a private trust in exclusive equity, per [the Trading with the Enemy Act] and the 1933 gold seizure, with trust law governing all contracts as offers (UCC military jurisdiction)."

15

The invocations of trust law and the gold standard in this context are hallmarks of sovereign citizen ideology.[15] *See Wood v. United States*, 161 Fed. Cl. 30, 34–35 (Fed. Cl. 2022). The Debtor's invocation of them is pure fantasy. Allowing the Debtor to belatedly amend his Complaint to include these fictions is textbook futility.

Given the Debtor's history here and in the District Court, it is apparent that he will not make allegations that states a plausible claim for relief. Additionally, his failure to plead fraud with particularity, *see* Fed. R. Civ. P. 9(b), cannot be fixed by repleading because his allegations are based on fundamental misunderstandings of the law. The Court thus finds that any attempt to amend the Complaint would be futile and only fuel further dilatory, repetitive, and wasteful litigation.[16] *See Whittingon v. Deines*, No. 21CV1224 DMS (JLB), 2021 WL 5761462, at *2 (S.D. Cal. Dec. 3, 2021) ("Courts across the country 'have uniformly rejected arguments' based on the sovereign citizen ideology as frivolous, irrational, or unintelligible.") (cleaned up).

---

[15] The Debtor's frequent use of "affidavits of truth" and reference to himself as "Authorized Representative" are likewise well-documented sovereign citizen tactics. *See Smith v. Quicken Loans*, No. 3:21-CV-903-L, 2021 WL 8323671, at *1 (N.D. Tex. Oct. 4, 2021); *Vongermeten v. U.S. Trustee*, No. 23-CV-0823-BHL, 2023 WL 4685858, at *1 (E.D. Wis. July 21, 2023). To be clear, the Debtor has the same right to access this Court as anyone else; however, in doing so, he is subject to the law as it actually is, not how he imagines it to be.

[16] Although the Second Circuit has said that "[a] *pro se* complaint should not be dismissed without the Court granting leave to amend at least once[,]" this is qualified by the requirement that "a liberal reading of the complaint gives any indication that a valid claim might be stated." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (internal quotation marks omitted). A determination that a complaint is futile is also determination that a valid claim cannot be stated, which the Second Circuit seemed to recognize by immediately following its statement with the qualification that "leave to amend a complaint may be denied when amendment would be futile." *Id.* (internal quotation marks omitted).

5.   Conclusion

For the foregoing reasons, the Motion is GRANTED. A separate order will enter dismissing this Adversary Proceeding.

IT IS SO ORDERED at Hartford, Connecticut this 18th day of March 2025.

*James J. Tancredi*
*United States Bankruptcy Judge*
*District of Connecticut*